GENEVIEVE T. WOODHOUSE, PLAINTIFF-APPELLANT, v. RICHARD P. WOODHOUSE, DEFENDANT-RESPONDENT.

Argued May 17, 1954—Decided May 31, 1954.

*Mr. Charles H. Roemer* argued the cause for the appellant (*Mr. Manuel Korn,* on the brief).

*Mr. John J. Connell* argued the cause for the resepondent.

The opinion of the court was delivered by

BURLING, J. This is an appeal in a civil action, for the recovery of moneys due the plaintiff under a foreign judgment. The action was brought by the plaintiff, Genevieve T. Woodhouse, against her divorced husband, the defendant Richard P. Woodhouse. Judgment for the plaintiff was entered in the Superior Court, Law Division. Upon the defendant's appeal the Superior Court, Appellate Division, reversed, remanding the matter for redetermination of damages. 28 *N. J. Super.* 63 (*App. Div.* 1953). We allowed certification on the plaintiff's petition therefor. 14 *N. J.* 463 (1954).

The salient features of this litigation, forming the background of this appeal, are set forth in Mr. Justice Oliphant's opinion, in this court, in *Woodhouse v. Woodhouse,* 11 *N. J.* 225, 227 (1953), wherein the question involved, determined in favor of the plaintiff, was the validity of the Nevada decree of divorce upon which the judgment now under review is premised.

Upon the remand to the Superior Court, Law Division, the opposing claims were submitted to that court by the parties by stipulation, dated April 6, 1953, upon an agreed statement of facts.

The agreed statement of facts recited the Nevada divorce decree of March 26, 1948, incorporating by reference that

decree, and the separation agreement of February 4, 1948, which had been made a part of that decree by the Second Judicial District Court of the State of Nevada. The agreement so incorporated in the Nevada judgment expressly stated that the plaintiff agreed that the terms thereof were made "as and for and in full of her right and claim in and to any interest in the community property of herself and the first party, as well as in full of her right and claim to alimony, support and maintenance from the first party." It provided for payment of the plaintiff's income taxes, to the extent that it was "agreed that in computing the said sum the income realized by the second party under the terms hereof is to be regarded as the total income of the second party." The agreement further provided:

"6. The second party does by these presents agree, in the event that she in any year or years during the life of this agreement should *realize any income from any source whatsoever other than from the first party hereto, she will accept a reduction in the periodic payments of money* heretofore agreed by the first party to be paid to the second party—said reduction to be in direct proportion to the sum of said income realized from any source or sources other than the first party." (emphasis supplied)

In addition to the foregoing, the agreement released to the plaintiff the defendant's interest in furniture, household furnishings and fixtures, and *inter alia* effected a release of dower and all other property rights she may have had in real or personal property of the defendant and was specifically made "a full and complete settlement of all property rights between the parties hereto as husband and wife," providing that in the event of divorce "this agreement shall be a full settlement of all property rights." The Nevada decree provided that "the agreement of the parties, dated February 4th, 1948, is adopted, ratified and approved and made a part of this decree by reference thereto."

In the agreed statement of facts under the stipulation of April 6, 1953, in the present suit, among other facts, the following expressions appear:

"During the calendar year 1950 defendant only paid $1575.00 on account of his alimony obligation and plaintiff by answers to interrogatories states she had no other income."

"During the year 1951, defendant paid only the sum of $1050.00 on account of his obligation to pay a total of $3200.00 and plaintiff claims she had to secure employment to maintain herself. She earned a total of $2315.00 during that year and according to answers to interrogatories, having no other income thus received a total income of $3315.00."

"During the year 1952, defendant paid no alimony at all and plaintiff received a total income of $3120.00 derived entirely from her employment."

"Defendant therefore argues that the moneys earned by the plaintiff in 1951 and 1952 should be applied in reduction of his obligation. On the other hand plaintiff's position is that since she was compelled to go to work to support herself by reason of defendant's failure to make the alimony payments ordered, he should not be permitted to profit by such failure to comply with the order of the court."

The Superior Court, Law Division, held that the word "income" as used in the separation agreement, in the instances hereinbefore quoted, did not include wages earned by the plaintiff. Judgment for the plaintiff was therefore entered without deduction of such earnings. The Superior Court, Appellate Division, reversed, holding that the agreement did not support the trial court's interpretation of the word "income."

The question involved in this appeal is whether, under the circumstances disclosed in this case, the defendant is entitled to a credit for wages earned by the plaintiff under that portion of the agreement, incorporated in the Nevada decree of divorce, that calls upon her to accept a reduction in payments thereunder if she "should realize any income from any source whatsoever other than the first party hereto."

The trial of this case was by the court resulting from a stipulation waiving trial by jury. See R. R. 4:39–1. The facts were undisputed and resulted from a written stipulation thereof in an agreed statement of facts. The plaintiff asserted in the agreed statement of facts that the defendant's delinquency in payments forced her to obtain employment. The absence of denial or contradictory allegation by the defendant, in the agreed statement of facts, therefore placed

him voluntarily in the position of one who fails to introduce any evidence to contradict the plaintiff's proofs. Under these circumstances, the fact stands undisputed.

██ Under the Federal Constitution and the decided cases our courts are required to give full faith and credit to a judgment of a foreign state with respect to alimony when the past due installments are irrevocable, absolute and vested under the law of the state in which the judgment was entered. *O'Loughlin v. O'Loughlin*, 12 *N. J.* 222, 226 (1953), *certiorari* denied 346 *U. S.* 824, 74 *S. Ct.* 42, 98 *L. Ed.* —— (1953). The question involved here is not one of modification of a foreign judgment and it is unnecessary to inquire into the law of Nevada relative to the modification of awards of alimony. *Id., p.* 229.

The question involved on this appeal is to determine the extent to which a separation agreement, judicially approved and given the binding effect of a judgment by incorporation in the Nevada decree, may be enforced.

██ The policy of our law, and that of Nevada (for example, a Nevada statute adverted to by the defendant on this appeal prohibits modification of payments of alimony after accrual, *Comp. Laws, Nev. Supp.* 1943–1949, *sec.* 9474.01), is to recognize the continuing duty of the husband to support the wife when he has been guilty of a marital offense. *O'Loughlin v. O'Loughlin, supra* (12 *N. J.*, at *pages* 229–231). The power of control over alimony arrangements is not in itself contractual, *Apfelbaum v. Apfelbaum*, 111 *N. J. Eq.* 529, 531 (*E. & A.* 1932) and a judgment is not in itself a contract, *Johnson & Johnson v. Weissbard*, 11 *N. J.* 552, 556 (1953), but the Nevada decree in this case incorporated by reference the contractual agreement. The dispute between the parties concerning the amounts of the installments past due, therefore, must be determined upon the contractual plane so solemnified.

██ The provisions of the agreement between the plaintiff and the defendant, as incorporated in the Nevada decree, clearly impose upon the defendant the primary obligation of making the full payments called for on an installment basis.

These provisions are bilateral in character, calling as they do for several promises on both sides. 3 *Williston on Contracts* (*rev. ed.* 1936), *sec.* 860, *p.* 2407. The defendant in the present case has received and retains the principal performance under the agreement incorporated in the Nevada decree, namely the release by the plaintiff of her dower and property interests in his property. The specific terms of the agreement are opposed to evasion by him of his obligations.

 The defendant in effect seeks to enforce the plaintiff's promise to submit to a reduction of installments under the decree. Salutary principles of justice inhibit the enforcement of a promise when the counter-promise has been broken. In the present matter the defendant's failure to perform is the inducing cause of the plaintiff's employment and consequent receipt of income. His failure therefore, on principles of justice inherent in the law applicable to contracts, deprives him of the right to claim a reduction in past due payments. *Cf. Keifhaber v. Yannelli,* 9 *N. J. Super.* 139, 142 (*App. Div.* 1950) ; 3 *Williston on Contracts, supra, sec.* 869, *pp.* 2443 *et seq.* See also *Coastal Oil Co. v. Eastern Tankers Seaways Corp.,* 29 *N. J. Super.* 565, 577 (*App. Div.* 1954).

We need not decide whether a New Jersey court has jurisdiction to relieve a wife of a promise made in a bargain for separation, incorporated in a foreign decree of divorce, which makes an unreasonable or inadequate provision relative to her support, nor whether there is an inadequacy or unreasonable provision in the agreement involved in this case. Such a determination is unnecessary to the disposition of this appeal. See 6 *Williston on Contracts, supra, sec.* 1742, *p.* 4930, *note* 5. Compare *Boehm v. Boehm,* 88 *N. J. Eq.* 74, 79–80 (*Ch.* 1917). Further we pass as moot the question whether the phrase "realized income" as used in the agreement between the parties, encompasses "wages," "salary" or "earnings."

For the reasons expressed in this opinion the judgment of the Superior Court, Appellate Division, is reversed, and the

judgment of the Superior Court, Law Division, is reinstated and affirmed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice WACHENFELD—1.